**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| Western Onion Sales, Inc., a corporation, | ) | |
| | ) | |
| Plaintiff, | ) | **TEMPORARY RESTRAINING ORDER** |
| | ) | |
| vs. | ) | |
| | ) | Case No. 1:06-cv-066 |
| KIDCO Farms Processing, Inc., a | ) | |
| corporation; KIDCO Farms, Inc., a | ) | |
| corporation; KIDCO Produce Farms, LLP, | ) | |
| a limited liability partnership; Van | ) | |
| Amundson, an individual; Terry Smith, an | ) | |
| individual; and Rodney Holth, an individual, | ) | |
| | ) | |
| Defendants. | ) | |

Before the Court is the plaintiff, Western Onion Sales, Inc.'s, ("Western") "Ex Parte Application for Temporary Restraining Order or, Alternatively, for Preliminary Injunction" filed on September 7, 2006. Western seeks a temporary restraining order and a preliminary injunction enjoining defendants KIDCO Farms Processing, Inc.; KIDCO Farms, Inc.; KIDCO Produce Farms, LLP; Van Amundson; Terry Smith; and Rodney Holth (collectively KIDCO) from dissipating the assets of statutorily created Perishable Agricultural Commodities Act (PACA) trust, until a final determination of the merits is made in the above-entitled action.

I.   <u>BACKGROUND</u>

This action arises out of a contract dispute between Western and KIDCO. Western operates as a seller of perishable agricultural commodities. Between April 24, 2006, and July 21, 2006, in a series of transactions, Western sold and shipped perishable agricultural commodities to KIDCO at KIDCO's request, for which KIDCO agreed to pay Western in the amount at least as great as the

sum of $204,848.76.  See Complaint, ¶ 15 (Docket No. 1).  On August 9, 2006, KIDCO wired $50,000 to Western, which reduced the principal balance due from $204,848.76 to $154,848.76.  See Affidavit of Joseph Gerard Valois, ¶ 12 (Docket No. 9-1).  Westerns asserts it has suffered losses in the amount of at least $154,848.76, plus attorneys' fees and interest.  See Complaint, ¶ 19. (Docket No. 1).


## II.   **LEGAL DISCUSSION**

Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, in determining whether a temporary restraining order should be issued, the Court must look to the specific facts shown by affidavit(s) to determine whether immediate and irreparable injury, loss, or damage will result to the applicant.  In determining whether preliminary injunctive relief should issue, the Court is required to consider the factors set forth in Dataphase Systems, Inc., v. C.L. Sys. Inc., 640 F.2d 109, 114 (8th Cir. 1981) (*en banc*).  The Eighth Circuit summarized those factors as follows:

> When considering a motion for a preliminary injunction, a district court weighs the movant's probability of success on the merits, the threat of irreparable harm to the movant absent the injunction, the balance between harm and the injury that the injunction's issuance would inflict on other interested parties, and the public interest. Dataphase Systems, Inc. v. C.L. Sys. Inc., 640 F.2d 109, 114 (8th Cir. 1981) (*en banc*).  We reverse the issuance of a preliminary injunction only if the issuance "is the product of an abuse of discretion or misplaced reliance on an erroneous legal premise." City of Timberlake v. Cheyenne River Sioux Tribe, 10 F.3d 554, 556 (8th Cir. 1993) *cert. denied* 512 U.S. 1236, 114 S.Ct. 2741, 129 L.Ed. 2d 861 (1994).

Pottgen v. Missouri State High School Activities Association, 40 F.3d 926, 929 (8th Cir. 1994).

The burden of establishing the necessity of a temporary restraining order or a preliminary injunction is on the movant.  Baker v. Electric Co-op, Inc. v. Chaske, 28 F.3d 1466, 1472 (8th Cir. 1994); Modern Computer System, Inc. v. Modern Banking System, Inc., 871 F.2d 734, 737 (8th Cir.

1989) (*en banc*).  "No single factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction."  <u>Baker Electric Co-op</u>, 28 F.3d 1472 (quoting <u>Calvin Klein Cosmetics Corporation v. Lenox Labs, Inc.</u>, 815 F.2d 500, 503 (8th Cir. 1987).

### A.   <u>SUCCESS ON THE MERITS</u>

Western asserts that as a seller of perishable agricultural commodities, it is the beneficiary of a statutory trust provided for by the Perishable Agricultural Commodities Act (PACA).  PACA provides in part:

> It is hereby found that a burden of commerce in perishable agricultural commodities is caused by financing arrangements under which . . . dealers . . . who have not made payment for perishable agricultural commodities purchased, contracted to be purchased, or otherwise handled by them on behalf of another person ,encumber or give lenders a security interest in, such commodities, or on inventories of food or other products derived from such commodities, and any receivables or proceeds from the sale of such commodities or products, and that such arrangements are contrary to the public interest.  This subsection is intended to remedy such burden on commerce in perishable agricultural commodities and to protect the public interest.

7 U.S.C. § 499e(c)(1).  PACA further provides:

> Perishable agricultural commodities received by a . . . dealer . . . in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such . . . dealer . . . in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transaction has been received by such unpaid suppliers, sellers, or agents.

7 U.S.C. § 499e(c)(2).  Western asserts that KIDCO is a dealer as defined by the PACA in that KIDCO has obtained a license by the United States Department of Agriculture.  <u>See</u> Docket No. 6-2, Exhibit 1.  Western also contends that it qualifies for PACA protection because the produce in

question met the PACA requirement of being sold in interstate commerce.  See 7 U.S.C. § 499a(6).

Finally, Western states that its invoices contained all of the language necessary to preserve its PACA

trust rights in compliance with 7 U.S.C. § 499e(c)(4).  See Docket No. 9-2, Exhibit 1.  Western

asserts that it has established all of the threshold prerequisites to recover under the PACA.

The Court finds that Western has established a sufficient likelihood of success on the merits

of its claims.  Accordingly, the Court finds this factor weighs in favor of the issuance of a temporary

restraining order.


B.      **IRREPARABLE HARM**

Western asserts that a temporary restraining order is necessary to avoid dissipation of the

PACA trust assets.  Western cites to several cases to support the proposition that the potential

dissipation of PACA trust assets constitutes irreparable harm.  See Tanimura and Antle, Inc., et al.

v. Packed Frest, Inc., et al., 222 F.3d 132, 140-41 (3d Cir. 2000); Continental Fruit Co. v. Gatziolis

& Co., 74 F. Supp. 453 (N.D. Ill. 1991); Gullo Produce Co. v. A.C. Jordan Produce Co., 751 F.

Supp. 54, 67 (W.D. Pa. 1990); DeBruyn Produce Co. v. Olympic Produce Co., 734 F. Supp. 483,

485-86 (N.D. Ga. 1989). In Tanimura, the Third Circuit held that injunctive relief should be granted

to a producer, explaining:

> [W]e conclude that an adequate remedy at law does not exist, and that injunctive
> relief to prevent dissipation of PACA trust assets may issue, when it is shown that
> the trust is being depleted and the likelihood is great that there will be no funds
> available to satisfy a legal judgment against he delinquent buyer.

Tanimura and Antle, Inc., et al. v. Packed Frest, Inc., et al., 222 F.3d 132, 139 (3d Cir. 2000).  To

support its assertion that KIDCO has dissipated the PACA trust assets, Western provided copies of

dishonored checks issued by KIDCO.

4

It does not appear that the Eighth Circuit has addressed the appropriateness of issuing a temporary restraining order in a PACA case.  However, the Eighth Circuit has ruled that a plaintiff established the requisite "irreparable harm" necessary for the issuance of a temporary restraining order when the plaintiff showed that if he prevailed on the underlying claim he would be entitled to monies held in an escrow account.  Lynch Corp v. Omaha Nat. Bank, 666 F.2d 1208 (8th Cir. 1981).  The Court finds that the Lynch case is analogous to those cited by Western and that the cases cited by Western are persuasive authority.

The Court finds that Western has established that it would likely suffer irreparable harm if a temporary restraining order was not issued at this stage.  Therefore, this factor weighs in favor of Western's request for a temporary restraining order.


### C.    BALANCE OF HARM

Western does not specifically address this Dataphase factor.  However, the Court finds that a temporary restraining order would maintain the status quo and would not create an undue hardship for either party.  Thus, this factor weighs in favor of the issuance of a temporary restraining order.


### D.    PUBLIC INTEREST

Although Western does not specifically address this Dataphase factor, the Court finds that the underlying purpose of PACA explicitly concludes that the public interest is best served by the creation and ultimate protection of perishable commodity producers.  See 7 U.S.C. § 499e(c)(1)("This subsection is intended to remedy such burden on commerce in perishable agricultural commodities and to protect the public interest.")(emphasis added).

III.   **CONCLUSION**

After carefully reviewing the record, the Court finds that Western has met its burden of establishing the necessity of a temporary restraining order.  The Court grants the Plaintiff's motion for a temporary restraining order (Docket No. 6) and will reserve ruling on the request for a Preliminary Injunction until after the show cause hearing as set forth below.

**IT IS ORDERED** that the Defendants shall appear in Courtroom One of the U.S. District Court for the District of North Dakota on Tuesday,  September 12, 2006, at 9:00 a.m. to show cause why they, their agents, bankers, subsidiaries, successors, assignees, principals, employees, attorneys, and representatives should not be restrained and preliminarily enjoined during the pendency of this action, pursuant to Rule 65 of the Federal Rules of Civil Procedure, from engaging in, committing, or performing directly and indirectly, any and all of the following acts:

A.   Removing, withdrawing, transferring, assigning or selling to any other person or entity, the proceeds from the sales of any or all existing or future inventories of food or other products derived from perishable agricultural commodities, and/or receipts of payment for products sold prior to the date of this order and/or otherwise disposing of assets, books or funds;

B.   Taking any other action whatsoever which causes, has the effect of causing, or which otherwise dissipates Plaintiff's beneficiary interests in trust assets of the Perishable Agricultural Commodities Act (PACA) [6 U.S.C. § 499e et seq.];

C.   Taking any other action whatsoever which violates 7 U.S.C. § 499e(c)(1) through (4), inclusive, and 7 U.S.C. § 499b(4) [§ 2 of PACA];

**IT IS FURTHER ORDERED** that the Defendants, their officers, directors, bankers, agents, subsidiaries, successors, assignees, principals, assignors, attorneys and person acting in concert with them appear at the same time and place to show cause why they should not be commanded by order of this Court and required to distribute PACA Trust assets in the amount of at least $160,125.76 which includes $154,848.76, the cumulative amount of the PACA Trust principal owing to Plaintiff, plus reasonable attorney's fees and costs.

**IT IS FURTHER ORDERED** that pending the hearing and determination of the foregoing Order to Show Cause, the Defendants, their agents, subsidiaries, successors, assignees, principals, assignors, attorneys and person acting in concert with them shall be and hereby are prevented from transferring, withdrawing, or in any other manner removing Perishable Agricultural Commodities Act [7 U.S.C. § 499e et seq.] trust assets, including funds on deposit in banking accounts held by or on behalf of the Defendants, from the Defendants' banking accounts, standing in the Defendants' names, or any one of them including but not limited to accounts held with Bremer Bank, National Association, Carrington, North Dakota 58421 and Northland Financial, 115 E. Broadway, Steele, North Dakota 58482.

**IT IS FURTHER ORDERED** that pending the hearing and determination of the foregoing Order to Show Cause, and continuing thereafter, the Defendants and their counsel, agents, or representatives, shall be preliminarily enjoined form engaging in, committing, or performing directly and indirectly, any and all of the following acts:

D.      Removing, withdrawing, transferring, assigning or selling to any other person or entity, the proceeds from the sales of any or all existing or future inventories of food or other products derived from perishable agricultural commodities, and/or receipts

of payment for products or crops sold prior to the date of this order and/or otherwise disposing of assets, books or funds;

E.      Taking any other action whatsoever which causes, has the effect of causing, or which otherwise dissipates Plaintiff's beneficiary interests in the trust assets;

F.      Taking any other action whatsoever which violates 7 U.S.C. § 499e(c)(1) through (4), inclusive, and 7 U.S.C. § 499b(4) [§ 2 of PACA].

**IT IS FURTHER ORDERED** that in the event the Defendants lack sufficient funds to promptly deposit the sums described above, Defendants shall be and hereby are required and ordered to:

G.      Immediately account to the Court and Plaintiff for all assets of the PACA trust from commencement of the Defendants' business through the date of this Order.

H.      Immediately assign the Defendants' produce-related receivables to Plaintiff for collection until Plaintiff is fully paid, and deposit and/or deliver complete accounts, records, and information of all of said receivables to Plaintiff's counsel without charge to the trust, and subject to Plaintiff's counsel making a weekly accounting for all receivables received or collected by Plaintiff's counsel in that regard. Plaintiff's counsel shall act as trustee in connection with its duties of collection of the accounts receivable and shall deposit any cash assets of the trust which are collected under this order in a trust account.

I.      Endorse any checks made, endorsed, or paid, to the Defendants which are trust assets and which are in their possession or obtainable by the Defendants at the time of the entry of this Order, or which the Defendants obtain or which become obtainable by

the Defendants after the entry of this Order, including but not limited to checks representing payment for sales of growing crops, and shall deliver said assets within 48 hours of the Defendants' receipt of them to Plaintiff's counsel as set forth above. Likewise, the Defendants shall deliver any cash assets of the PACA trust which are in its possession or are obtainable by the Defendants at the time of the entry of this order, or which the Defendants obtain or which becomes obtainable by the Defendants after entry of this Order, within 48 hours of the Defendants' receipt of them to Plaintiff's counsel.

J.    File weekly with this Court satisfactory evidence of compliance with the terms of this Order.

**IT IS FURTHER ORDERED** that pending the hearing and determination of the foregoing Order to Show Cause, and continuing thereafter, Plaintiff and Plaintiff's counsel, agents, or representatives, shall have full and complete and continuing access to all of the Defendants' books and records, which shall include but not necessarily be limited to the Defendants's accounts receivable and payable ledgers, invoices, ledgers, computer runs, bank statements and canceled checks, relating to the Defendants' business and person financial status from commencement of the Defendants' business activities forward for the purpose of verifying the Defendants' accountings required by this Order and for enforcement of this Order.  The Defendants shall, upon 2 business days notice by Plaintiff's counsel, allow inspection and copying of the books and records of said Defendants by Plaintiff or its representatives at the Defendants' place of business.

**IT IS FURTHER ORDERED** that pending the hearing and determination of the foregoing Order to Show Cause, and continuing thereafter, Plaintiff shall be entitled to depose, under oath, at

reasonable times and places, upon at least two (2) business days notice, the Defendants and/or the Defendants' other principals, owners, directors, officers, shareholders, employees, agents and accountants concerning any matter pertaining to any accounting due pursuant to this Order, any books or records which Plaintiff is entitled to inspect under this Order, the trust assets or any of the Defendants' business assets, and/or the Defendants' business practices, procedures or operations from commencement of Defendant's business activities.

**IT IS FURTHER ORDERED** that the requirement for security under Rule 65(c) is waived. Pursuant to Local Rule 65.2, the Court directs the United States Marshal Service to serve the Defendants, Bremer Bank, National Association, Carrington, North Dakota, and Northland Financial, 115 E. Broadway, Steele, North Dakota, with certified copies of this order.

Dated this 8th day of September, 2006.

*/s/  Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court

10